Thank you. I believe this case is pretty straightforward. We believe that the district court's decision should be overturned and remanded back for another decision. We would like to begin with what I think is one of the main issues in this case, is the district court's decision doesn't address several of the arguments that plaintiff raised at the court level. The decision relies heavily on Jones, which is a case that has to do with actual authority, not just actual authority, higher-level respondent, superior employee-level agency authority. There's no mention of ratification. There's no mention of implied authority. And there's no mention of the on-behalf-of issue that was raised at the trial court. This would be less of an issue if, say, we were at a motion-to-dismiss level coming up here. But at a summary judgment level, the plaintiff still, to this day, doesn't understand, doesn't know what evidence the judge found insufficient. Well, but we're here on de novo review, so we can review the legal issue that's been you think were not specifically covered in Jones and that you think are pertinent to this case? I understand that, Your Honor. I just felt it was important to bring that out because it made it more difficult to focus on which evidence maybe the court should highlight at this level when we don't know at the lower level what evidence the judge did not consider or if he considered insufficient or how it was insufficient. But at this level, I believe that based on the evidence that was submitted, there are... I just want to understand a background factual or legal aspect of the case and that this is a do-not-call case. So this isn't a robo-call case or automated voice. This is a do-not-call only. Is that correct? That is correct, Your Honor. And what is the provision of the statute that is relevant to the do-not-call provision? It's the 45 USC, and I'm sorry, Your Honor, I don't remember the back end of it, but it's section C. The prerecorded call and the auto-dialer sections are in B and the do-not-call is in C. That's where our on-behalf of argument really comes out of, is that that on-behalf language, while it's also in, I believe it's A, is the facsimile section. I'm sorry, Your Honor, I don't remember exactly off the top of my head. But the section C under the do-not-call, and I believe it's under the regulation, it's under the statute and the regulations, talks about the on-behalf of added language that is not in the auto-dialer or the prerecorded section. And I think that's really important. 227C, is that of Title 47? Yes, yes. Okay. Yes. All right, because there were references to B1B in some of the papers, and that seemed confusing to me. Yes, I think we were just trying to juxtapose the difference between B and C. The case is definitely focused on C. All right. Okay. So tell us why you think that you've established a triable issue of agency and on what particular sub-agency theory. Yes, I think that, I mean, we raised several issues, implied actual authority, implied authority, ratification, and then, of course, our on-behalf. I want to make sure I focus kind of, I'd really like to, I mean, I believe the ratification, we've shown that Lending True knew their people were making calls. There were some issues with they knew their people were being sued. They knew their people were not identifying themselves properly under the DCA. Let me ask you about the, that they knew that their people were being sued. You referenced two lawsuits, correct?  And one of the lawsuits, as I understand it, involved an identity theft situation where it didn't seem to involve issues at all similar to the ones here. Is that correct? Yes, I understand, Your Honor. The reason why we raised those is if they're having issues with their telemarketers, I mean, their contract says their telemarketers are supposed to follow the law. If the telemarketers are committing even other kinds of violations, it should reasonably lead them to believe, like, maybe we should look in to see what our people are doing. But it seems like you're referring to these two cases because they would have placed Lending True on notice that they have some bad actors that are violating the TCPA, because that's what this case is about, versus just kind of writ large that you have people that are violating the legality. I understand, Your Honor. I think our point was that this is showing that they have bad actors and that if you're doing business for any of this, including, and the TCPA is very strict and the do not call rules are very strict. I mean, they're required to have their own version of the do not call list to ensure that, you know, these telemarketers are not making calls to the do not call list. And I'm not saying that one lawsuit or one fraud would be, but I think when you look at it in the aggregate of these things, knowing that there are people. But even in the aggregate, I mean, these two cases are, if not nothing burgers, they're not ones that really inform Lending Tree about what's going on according to your narrative. I mean, even the second case that you cite, it's a very basic TCPA case and it doesn't allege that its actors are the ones that are doing things like violating the TCPA. So it seems to me that that assertion is very critical in your analysis. Would you agree with that? I don't think it's, I don't think it's in, I wouldn't call it critical. I would say it's  In terms of willful negligence or ignorance, in terms of knowledge, notice. I think it's, I think it's something that would put them on notice, but I think it's, we have to look at it in conjunction with the whole thing of what was happening. I think those are not the, if that wasn't there, we'd have, we'd have nothing. I don't, I don't believe that. I think, I mean, the main R, what I think is critical is Lending Tree knowing that their telemarketers were using false names, that they were, they were, that's a violation of the TCPA, as we pointed out. They're required to identify themselves when they make a call. The Lending Tree contract that Lending Tree relies on heavily in this case states that their telemarketers will not violate the TCPA. But right there, the telemarketers, as we saw in this case, because we couldn't even identify the exact caller in this case. Now, we address it because it had to be them through the technical use of the telephone equipment, but we couldn't even identify them because they used a false fabricated name or a made up name in violation of the TCPA. And how did Lending Tree know that they'd used a false name? They knew when we asked them in the deposition, they knew that their telemarketers had done that. They had known that their telemarketers, and they believe they said in the reply brief that this is okay because, you know, companies use different names all the time. Well, under the TCPA, it's not okay. You need to identify yourself when you call to make calls, especially to the Do Not Call, which is, which very strictly enforced. It's got the Do Not Calls for people who don't want to have telemarketing calls. And if I could just, before I go to save time for my rebuttal, if I could just address really quickly the on behalf of, I think it's very important, and we believe that the on behalf of liability is a lesser standard of agency. And part of the reason that I want to make sure that we get across and it's clear to us is it's different than the telecommunications, the pre-recorded call and the auto dialer are equipment. You would need to know and see and know the software to see how they're being used. Do Not Call is not like that. Do Not Call is easy. The seller is required to have a copy of the Do Not Call list, can run the numbers being called against at any time to see if numbers are being run against Do Not Call list. They can then ask for the consents because that's the reason that we could get any calls or why they were able to call. And people on the Do Not Call list, it's not prohibitive to all telemarketing, just people who specifically did not want to be called. And I think those things really lend towards why Congress put on behalf of in there. And if you're not, your honors, I'd like to receive my final minute for rebuttal. Great. Thank you, counsel. Thank you very much. We will hear next from Mr. Polanski. Good morning, your honors. May it please the court. Kevin Polanski on behalf of LendingTree. In this TCPA agency case, the appellant cannot identify the caller, cannot identify how the call was made, cannot identify any control over the call. Did it not come out in discovery any kind of phone records to identify who this mysterious entity was? There is no evidence of who made the call. No evidentiary trail at all as to the call? That's correct. And the phone records didn't show who made these then follow-on calls that weren't answered? I don't believe that the plaintiffs actually pursued that line of discovery of whose phone number that number belongs to. There was no subpoenas on that effect. In LendingTree's business records, they had no record of that phone number and certainly didn't have any record of national mortgage advantage. So let me ask you, in terms of the Invoca, the system that was used by LendingTree, does it identify the caller as to the telemarketer that's forwarding the call? Only if the call lasts a certain length of time. Why is that? That becomes a billable event. So under the master marketing agreement, there's a billable event that if they have an agency relationship, they can send it through the Invoca and that billable event is at three minutes or longer. And so that's when it sort of highlights who that affiliate would be and why you'd pay them. And as far as the use of either fake or fictitious names, counsel for the appellant said that LendingTree was aware of that. And that's true. So to the extent that people were using these fictitious names, did you feel that it was necessary to follow up and determine why are they doing that? Well, it's really no different than a trade name, right? So you have a business that it's trade name. So in this case, they were using national mortgage advantage when they would make the call, assuming that's the case. Again, we have a dearth of evidence with respect to that. Let me back up for a second. So whoever was identifying themselves as national, they had access to the Invoca system, correct? That's correct. And then they would then necessarily have been one of the telemarketers that was doing business with LendingTree? Yes, they would have the ability. And so to the extent that this was a trade name that was being used by one of the telemarketers that was using Invoca with the knowledge and consent of LendingTree, then you would expect that LendingTree would be familiar with or know what the trade names were for these partners or these marketers, right? Not necessarily, because we don't have access to that original call, right? So LendingTree doesn't control that call, doesn't make the call. They don't have the recording of that call. What they have is at the time that the call gets transferred to Invoca, that turns on the recording for the LendingTree call, which is what we have here. So they don't know if another company is using a trade name national mortgage advantage necessarily. And in this case, we know from Tim Stacy and his declaration that they'd never have a single complaint regarding national mortgage advantage. And so nothing would have provided any sort of knowledge to go and research. They'd never had a single complaint with respect to national mortgage advantage during this pay-per-call program. As far as complaints, have they received complaints with respect to other telemarketers as to violating the do-not-call provisions? Well, nothing in the record would suggest so. What does that mean, nothing in the record? Nothing developed during discovery, nothing that you're aware of? Sure, nothing in the summary judgment record in front of you in which other telemarketers may have violated. What they receive is these do-not-call opt-outs, right? So somebody wants to take their name off of the list, and they receive an opt-out. And they process that opt-out so that no additional calls are made by LendingTree. I believe, although, again, not in the record, they likely have received complaints relating to other calls that have been made to them. With respect to national mortgage advantage, I would say no. We know that the undisputed record shows that they never received a single complaint regarding national mortgage advantage. Every theory that the appellant has put forward fills at the threshold. Agency law requires evidence, evidence of some manifestation, some direction, some control. We know from the record that there is a marketing agreement that requires TCPA compliance. There's no other directive or manifestation in this record to show that LendingTree was aware or manifested or directed calls to be made in violation. Why isn't a willful ignorance theory one that can proceed? Because again, it relates to this actor, right? So this third-party affiliate, as outlined by Tim Stacy, they've never had any other complaints or evidence of this company providing any sort of violations of the TCPA. And moreover, we don't even know if there has been a violation of the TCPA. The only thing we have in the record in front of us is that George from National Mortgage Advantage called the individual. We know nothing about the call, whether there was consent to be contacted, how the call was made, or even whether, because again, if you look at the master marketing agreements, this was a mobile marketing campaign, not a calling campaign. So the individual would go on some advertising, click, and they would receive a call by pressing a click on that mobile marketing campaign. So there is nothing in the record to show that anyone was violating the TCPA, and there is certainly nothing during that April Ellis call to give that indication that there was a violation. Mr. Sapien certainly didn't say. Did you move in the district court for summary judgment on these grounds as an alternative theory? When you say these grounds, all agencies? On the grounds that it wasn't a violation at all, as opposed to that there's no agency. We didn't, no. Okay. So we don't really have that in front of us. You don't, except you don't have any evidence that it violated one way or the other, but we didn't move in that basis. Right, but the only thing before us is whether there's sufficient evidence of agency, assuming that there was a violation because that issue wasn't teed up for summary judgment.  Okay. Yes, Your Honor. Just quickly, with respect to this on behalf of, this court has addressed it in Henderson and Gomez that there is no additional level of agency under the statute. That on behalf of language, simply set up a vicarious liability model by which to invoke potential liability on behalf of principals from agents making calls that, in which there's some federal common law agency. So again, we would rely on the Henderson and Gomez cases to reject that additional level of a theory that the appellant is advocating. And then simply, I would just, again, go back to sort of the ratification. Here we have a call that was transferred. There was no actual communication other than maybe on April, LendingTree. There's no benefit. The call didn't, you know, last long enough to result in a benefit. And LendingTree is a comparison network. They don't make any sales. They don't sell mortgages. They simply direct you. Does LendingTree have anything set up that when they get the incoming call transferred, that the number is checked against the do-not-call list and they learn that right away? Based on the record, no, Your Honor, there is not, no. What they do rely on is the fact that their affiliates will have TCPA consent. That's in the master marketing agreement. And that for this particular campaign, because it was a mobile marketing campaign, there's no actual calls going out. There is a, again, a digital advertisement where the consumer would click on and a call would be made at that time. So... And if the consumer clicks on that, then they are consenting to a call, even if they are already on the do-not-call list. That's exactly right, Your Honor. And so do we know what the plaintiff did here? Do we know whether he clicked on this? No, that's one of the issues, is that we actually have no evidence of what the plaintiff did, what he received, what kind of call was made, what kind of control, what was said. There's such a dearth of evidence that under any agency theory, we don't know what was done here. And if you click on the mobile ad, does that mean that somebody like National Mortgage Advantage can call you unlimited times because you've consented to receive a call? I wouldn't go as far as saying unlimited times. I think that obviously there's a reasonable... Nine?  I don't know. I would have to see what the disclosure says that they clicked on to see what they opted to receive. And we certainly just don't have that level of intel. Unless there's any additional questions, I'll rest my papers at this time. All right. Thank you, counsel. Thank you very much, Your Honor. We'll hear rebuttal. Thank you, Your Honors. I'd just like to start by addressing... I'm going to ask you the same thing. Does the record say anything about where this... I mean, records about the call, where it came from? Because that's kind of the logical answer. You look, well, there'll be a phone record as to who made the call, and that would sort of take up this mystery of who this company is. Yes, I agree, Your Honor. That brings me to a point that was raised about willful ignorance, which is exactly what LendingTree is doing. They are trying to look the other way because I believe... But willful ignorance of what? The LendingTree says, we don't even know if there was actually a violation of the TCPA. Your client is on the list, so he cannot be called unless he has otherwise consented. If there's a possibility that he otherwise consented, there may not even be a violation here. So what's to check? My client has said in his declaration and in depositions that he has not consented. He has not filled out any websites. That is in the record. That is in the summary judgment record that my client... And as Your Honor raised, that was not raised at trial. Why didn't you get the phone records and find out where this call came from? And then I'd try and trace who that number was assigned to and figure out... Because right now you're trying to assign agency, and we don't even know who the agent is or the circumstances surrounding the agent. And I understand that, Your Honor. And typically in these cases, you can get that from the telemarketer who hired it through their, say, Invoca system. But in this situation, their Invoca didn't even log the call. So they said they don't know who the telemarketer is because they don't know the trade name, National Mortgage. Because again, it's a fake name. The phone number could have been spoofed. In order to do what Your Honor wants to do, the subpoena like through the telephone company, it can take years. It's very, very difficult to find a phone number or a call without some kind of originating point because they don't know who National Mortgage is, who clearly called for them as there's no way it could have gone through the Invoca system if it was not a person who had access to it, that LendingTree gave access to that system. So it's impossible that it wasn't one of their vendors. That is absolutely impossible, as shown in the record. It had to be one of their vendors. But they don't even know who it is because they didn't keep any track of who it was. They don't know the National Mortgage, so they don't know who National Mortgage... Typically in these cases, it's easy. Who's National Mortgage? Oh, these are these people. Then we can subpoena National Mortgage. We don't even know if National Mortgage is a real... I suspect it's not a real name, but we don't even know if National Mortgage is a real name because they don't keep the records because they don't want us to find out. They don't want us to know. And I just want to raise one quick point where he pointed out in the record that LendingTree has a Do Not Call. They know people are making calls to the Do Not Call list, yet do they get the consent? It's their burden as the caller to have... They know that there's these calls that are being made to Do Not Call numbers. Where is that in the record? That's the emails that counsel mentioned where people are saying, please put my number on your internal Do Not Call list. But they're entitled to have a copy of it anyway. So they will know people are being called on the Do Not Call list. All they have to do is say to their vendors, give me the... If they said, give me the consent and this vendor had a consent, we wouldn't even be here because they would have produced the consent and we would have been out of luck. But they don't ask for the consents. They know people are being called. They're not asking for the consents. How numerous are these situations where people are following up in emails to let them know? I don't know the exact number of emails we put. We put the emails that we were able to obtain from Discovery in the record. I don't know the exact number off my head. I'm sorry, Your Honor. Okay. All right. Thank you, counsel. Thank you. The case just argued will be submitted. Thank you.
judges: BYBEE, COLLINS, Curiel